## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

----------------------------------------------------------------

| | |
|---|---|
| **LAUREN BEOHM,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **-v-** § | |
| § | **Civil Action No. 1:23-cv-00049** |
| **B.S.D. Capital, Inc. d/b/a Lendistry** § | |
| § | |
| **Defendant.** § | |
| § | |

----------------------------------------------------------------

## ORIGINAL COMPLAINT

Plaintiff Lauren Beohm (herein referred to as "Plaintiff" or "Mrs. Beohm") brings this complaint for violations of the Americans with Disabilities Act.  Plaintiff complains of B.S.D. Capital, Inc. d/b/a Lendistry (herein referred to as "Defendant" or "Lendistry"), and shows unto the Court as follows:

### PARTIES

1.      Plaintiff is Lauren Beohm. Plaintiff resides in Austin, Texas. She may be served through the undersigned counsel.

2.      Defendant is B.S.D Capital, Inc. d/b/a Lendistry is a Delaware corporation whose principal place of business is in California that is authorized to do business in Texas. Defendant may be served with summons through its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201-3136.

**JURISDICTION, SERVICE, & VENUE**

3.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 in that the claims arise under an act of Congress, specifically Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claims under state law. This Court also has diversity jurisdiction in this case because Plaintiff and Defendant are from different states and the amount in controversy exceeds $75,000.  There is complete diversity among the parties.

4.      This Court has jurisdiction over the Defendant because, *inter alia*, it has purposely availed itself of the protections of Texas law such that being sued in Texas should not be a surprise.  The number, nature, and quality of Defendant's contacts with Texas are such that being sued in Texas does not offend the notions of fair play and substantial justice. Without limitation, This Court has personal jurisdiction over the Defendant because it is conducting business in Texas, is amenable to service under applicable law, and the events that form the basis for this suit arise out of Defendant's contacts with Texas.  Plaintiff contends that Defendant is subject to specific and general jurisdiction in Texas, including in the Western District of Texas, Austin Division with respect to this case.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 139l(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, and because Defendant has its principal place of business in this state within this judicial district and division.

6.      All conditions precedent for filing this suit have been fulfilled, including exhaustion

of administrative remedies.

## FACTS

7.      Lendistry hired Mrs. Beohm full time on November 8, 2021 as a Credit Manager to work remotely from her home in Texas. Mrs. Beohm reported to Lynn Fernandez, Chief Credit Officer, Rachel Zebro, Senior Human Resources Business Partner, as well as Everett Sands, CEO.

8.      Upon Mrs. Beohm's onboarding, she hit the ground running in her role as a Credit Manager by managing a team of Underwriters, attending meetings, and reviewing loan packages prepared by the Underwriters.

9.      Unfortunately, Mrs. Beohm was diagnosed with Anxiety before she began working at Lendistry. On November 11, 2021 and November 30, 2021, Mrs. Beohm attended telephonic treatment with her psychiatrist, Dr. Patel, and her PA, M. Dennis Kinoti. In their time together, Dr. Patel prescribed Mrs. Beohm with anti-anxiety medication to help Mrs. Beohm work through the issues arising from work that triggered her Anxiety.

10.     In January 2022, Lendistry promoted Mrs. Beohm to Senior Credit Manager/NMTC. As background, when Mrs. Beohm was hired, Ms. Fernandez informed Mrs. Beohm that Lendistry was starting a New Markets Tax Credit ("NMTC") program, that would be managed by the Credit Administrator, Young Sung. Both Ms. Fernandez and Mr. Sung attended a one-on-one meeting to try and determine the best course of action, since Mr. Sung stated that he did not want to be the NMTC Manager. As a result and immediately following their meeting, Ms. Fernandez asked Mrs. Beohm to take on the position instead. Hence, Lendistry promoted Mrs. Beohm to Senior Credit Manager/NMTC whereby Mrs. Beohm would also be responsible for running the NMTC program. The NMTC role required Mrs. Beohm to create a NMTC Underwriting guideline, interact with the Chief Risk Officer,

attend multiple meetings, and other duties. Mrs. Beohm asked Ms. Fernandez a few times to please remove Mrs. Beohm from this additional role since it was taxing on Mrs. Beohm's physical and emotional health. Each time, Ms. Fernandez refused.

11.     On February 3, 2022, Mrs. Beohm could feel her body shaking from all the pressure and stress. So, Mrs. Beohm contacted Ms. Zebro. In their call, Mrs. Beohm stated to Ms. Zebro: "I took this job, and it started well. However, recently, I was thrust into an additional role [referring to NMTC] that requires me to interact with strong personalities, which is detrimental to my mental health. It's a role that my manager, Lynn, said was supposed to be assigned to another senior team member [referencing Mr. Sung]. I am sharing this information because it is serious for my mental health. What do you suggest?" Ms. Zebro responded to Mrs. Beohm: "I hear you. I do understand, as my background is in Psychology. At no time would we put you in a situation that affects your mental health. I don't know all the details, to know how meetings are set up and what is an option. I will discuss and get Lynn's take." Mrs. Beohm replied to Ms. Zebro: "Will you share with Lynn that I am being treated for mental health?" Next, Ms. Zebro said to Mrs. Beohm: "It's up to you!" They continued with brief dialog back and forth. Lastly, Mrs. Beohm stated to Ms. Zebro: "I prefer not to due to HIPAA. I am only sharing this with HR at this time."

12.     Following the meeting with Ms. Zebro, Ms. Fernandez stated to Mrs. Beohm that she would try and limit Mrs. Beohm's contact with the person Mrs. Beohm was triggered by, through serving as a buffer between Mrs. Beohm and the team member. However, this alleged protection ended up being smoke-filled promises as just a few weeks later Ms. Fernandez scheduled a NMTC meeting that Mrs. Beohm was supposed to lead, which included the same person Mrs. Beohm needed to avoid on the meeting invitation.

13.      On February 9, 2022, Mrs. Beohm contacted Ms. Zebro for the second time because her Anxiety peaked at an all-time high due the additional NMTC role and related responsibilities. In their dialog, Mrs. Beohm told Ms. Zebro that Ms. Zebro had Mrs. Beohm's permission to disclose to Ms. Fernandez that Mrs. Beohm suffered from and experienced symptoms of Anxiety arising out of the additional NMTC role. Mrs. Beohm also said to Ms. Zebro: "I have expressed my desire to my manager, Lynn, to exit this newly assigned role and to limit my contact with an individual who has a strong personality. However, both requests were denied." Hence, the company had official notice of Mrs. Beohm's disability at that moment. Of note, Ms. Zebro being in a position of authority had a duty to initiate the interactive process and offer Mrs. Beohm workplace accommodations since Ms. Zebro knew or had reason to know that Mrs. Beohm could benefit by such accommodations. This was Mrs. Beohm's first major red flag that Lendistry was singling her out based on her Anxiety disability.

14.      On February 10, 2022, Mrs. Beohm and Ms. Fernandez had a one-on-one meeting. In their dialog, Ms. Fernandez stated to Mrs. Beohm that Ms. Zebro notified Ms. Fernandez of Mrs. Beohm's Anxiety complaint. Ms. Fernandez continued by stating that she could not understand why the NMTC role caused Mrs. Beohm to experience Anxiety. Mrs. Beohm attempted to explain the reasons why, and Ms. Fernandez ignored her request for help at that time. Instead, Ms. Fernandez acted like she would not pull Mrs. Beohm off of the NMTC program. In response, Mrs. Beohm stated to Ms. Fernandez that she would need more people to help with the NMTC program as well as a higher salary to carry out such a duty. Ms. Fernandez responded to Mrs. Beohm that she would speak to Mr. Sands later that day. Of note, like Ms. Zebro, Ms. Fernandez being in a position of authority had a duty to initiate the interactive process and offer Mrs. Beohm workplace accommodations since Ms. Fernandez

knew or had reason to know that Mrs. Beohm could benefit by such accommodations. This was Mrs. Beohm's second major red flag that Lendistry was targeting her based on her disability.

15.     On February 17, 2022 and February 28, 2022, Mrs. Beohm attended telephonic treatment with her Psychiatrist, Dr. Patel, and PA, M. Dennis Kinoti. In their time together, Dr. Patel continued to prescribe Mrs. Beohm with anti-anxiety medication to help Mrs. Beohm work through the issues arising from work that continued to trigger her Anxiety.

16.     From late February 2022 through early March 2022, Mrs. Beohm reached out to Ms. Fernandez multiple times via Microsoft Teams to follow up on their most recent NMTC discussion. In each of these attempts, Ms. Fernandez ignored Mrs. Beohm once again. This was Mrs. Beohm's third major red flag that Lendistry was retaliating against her based on her disability.

17.     On March 7, 2022, just weeks after both Ms. Fernandez and Ms. Zebro had notice of Mrs. Beohm's disability, Anxiety, and that it was being triggered, Lendistry terminated Mrs. Beohm. That morning began with Mrs. Beohm attending her one-on-one with Ms. Fernandez. In their meeting, a Human Resources team member was also present where they fired Mrs. Beohm for allegedly "not wanting to do the additional role."

18.     On March 8, 2022, Mrs. Beohm received a "Notice of Employment Separation" letter dated March 7, 2022 stating the reason for Mrs. Beohm's termination was allegedly due to "job dissatisfaction." This could not be further from the truth.  Plaintiff was not dissatisfied with her job, and there was no legitimate non-discriminatory reason for her termination. Plaintiff thereafter filed a timely complaint with the EEOC and Texas Human Rights Commission, and ultimately obtained the right to sue.

**CAUSES OF ACTION**

A.      **Americans with Disabilities Act**

19.      Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

20.      The acts and circumstances described herein constitute violation of the Americans with Disabilities Act by Defendant against Plaintiff.  Without limitation:

        a.      Plaintiff has a physical or mental impairment;

        b.      The physical or mental impairment substantially limited one or more of Plaintiff's major life activities;

        c.      Plaintiff was a qualified individual for her job with Defendant;

        d.      Defendant failed to reasonably accommodate Plaintiff, and failed to even initiate an interactive process; and

        e.      Plaintiff was discharged, subjected to a hostile work environment, harassed, and discriminated against because of her physical or mental impairment.

21.      As a result of Defendant's actions, Plaintiff has suffered damages.

22.      The actions of Defendant were committed intentionally, willfully, and with malice.

**DAMAGES**

23.      As a proximate result of the Defendant's discrimination, Plaintiff suffered damages, which would not have occurred otherwise. Plaintiff pleads for all damages

available under Texas state law, federal law, and equity, including:

      a.   Past and future pain and suffering;

      b.   Past and future mental anguish;

      c.   2 years' lost wages

      d.   2 years' lost benefits

      e.   Reasonable and necessary attorney fees to extent recoverable at the maximum rate allowed.

24.      Plaintiff seeks punitive and/or exemplary damages in the highest amount allowed by law.

25.      Plaintiff pleads for all other damages, pecuniary or otherwise, arising out of law or equity, that she may be justly and equitably entitled to, in the wisdom of the Court.

## PRAYER

Plaintiff requests that Defendant be summoned to appear and answer this Complaint; that upon final trial, Plaintiff have judgment against Defendant, for the amount of actual damages and for other and different amounts as she shall show by proper amendment before trial; attorney fees; for pre- and post-judgment interest at the applicable legal rate; for all Court costs incurred in this litigation; and for such other relief, at law and in equity, both general and special, to which Plaintiff may show she is entitled to and to which the Court believes her deserving.

Respectfully submitted,

*s/C. Ashley Callahan*
C. Ashley Callahan
State Bar No 24027545
LAW OFFICES OF C. ASHLEY CALLAHAN, P.C.
603 W. 17th Street
Austin, TX 78701
(512) 817-3977—Phone
(512) 287-3127—Fax
acallahan@callahanlawoffices.com

Nicole Conger
The Law Office of Nicole Conger, PLLC
State Bar No. 24064571
13809 Research Blvd., Suite 500
Austin, Texas 78750
(512) 413-4260
 nicole@nicoleconger.com

**ATTORNEYS FOR PLAINTIFF**